■ In the Matter of BERNARD MOSKOWITZ, Respondent, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Appellants. — Order of the Supreme Court, New York County (A. P. Williams, J.), entered February 3, 1983, denying respondents-appellants' motion to dismiss the petition, is unanimously reversed, on the law, without costs, the motion granted and the petition dismissed.

In New York State, a nursing home cannot be operated without a grant of "establishment" from the respondent-appellant Public Health Council (PHC) pursuant to section 2801-a of the Public Health Law and the issuance of an operating certificate by the Commissioner of Health pursuant to section 2805 of the Public Health Law. Both of these authorizations are required (see *Matter of Spiegel v Whalen,* 44 NY2d 745, 746).

The grant of establishment may be revoked by the PHC pursuant to the procedures set forth in section 2801-a (subd 10, par [b]). Judicial review of all orders or determinations is available pursuant to CPLR article 78, but such review must be sought within 60 days after service thereof (§ 2801-a, subd 10, par [b], cl [v]).

On February 19, 1982, after a hearing, appellant Public Health Council issued a resolution pursuant to section 2801-a (subd 10, par [b]) of the Public Health Law which revoked the establishment approval which had been given to the respondent Bernard Moskowitz and one Moses Unger for the Caton Park Nursing Home. However, the resolution directed that Moses Unger continue to be responsible for the operation and control of Caton Park until such time as a receiver assumed authority, an operator was established, or some other arrangement was made

for the care of the remaining patients. The reason for the revocation was that respondent Bernard Moskowitz had been convicted of grand larceny in the second degree, resulting from an indictment concerning respondent's falsification of nursing home costs.

Copies of the resolution were sent to respondent Moskowitz and Mr. Unger by certified mail under cover of letters dated February 22, 1982, and were delivered to respondent and to Mr. Unger on February 26, 1982 and March 2, 1982, respectively.

On March 22, 1982, after a hearing, appellant Commissioner Axelrod of the Department of Health issued an order revoking the operating certificate which had been issued to respondent Moskowitz and Mr. Unger to operate Caton Park and directing respondent Moskowitz and Mr. Unger to surrender Caton Park's operating certificate within 10 days of service of the order. Appellant Commissioner's March 22 order further directed respondent Moskowitz to "immediately * * * withdraw from participation in the management and operation of Caton Park Nursing Home" and, pursuant to section 2806 (subd 5, par [b]) of the Public Health Law, issued an interim operating certificate to Mr. Unger.

On February 19, 1982, after a hearing, the PHC issued a resolution, pursuant to section 2801-a (subd 10, par [b]) of the Public Health Law, which revoked the establishment approval which had been given to the respondent Moskowitz for the Rofay Nursing Home. The basis for that resolution was the same as the basis for the Caton Park resolution. However, unlike the situation at Caton Park, respondent Moskowitz had no partner who could immediately take charge of Rofay's patients. The resolution therefore directed respondent to be responsible for the operation and control of Rofay "until such time as a receiver assumes authority, an operator is established, or some other arrangement is made for the care of the remaining patients".

A copy of the resolution was sent to respondent Moskowitz by certified mail under cover of letter dated February 22, 1982, and was delivered to respondent on February 25, 1982.

On March 4, 1982, after a hearing, appellant Commissioner Axelrod of the Department of Health issued an order revoking the operating certificate which had been issued to respondent to operate Rofay and directing respondent to surrender Rofay's operating certificate within 10 days of service of the order. In addition, the order directed respondent to remain responsible for the operation and control of Rofay "until such time as a receiver assumes authority or some other arrangement approved by this Department is made for the care of remaining patients" and

specified that "during the time period the facility is operated in accordance with the terms of this Order it shall be deemed to be operated pursuant to an operating certificate for purposes of §§ 2805 (1) and 2807 (1) of the Public Health Law."

Thereafter, respondent Moskowitz commenced the instant article 78 proceeding seeking a judgment annulling appellants' determination revoking the operating certificates and establishment approvals for Rofay and Caton Park.

Appellants moved to dismiss the petition. The basis for the motion was that respondent Moskowitz had received appellant Public Health Council's resolution in February, 1982 and that this proceeding was not commenced until 89 days after respondent had received the resolution revoking Rofay's establishment approval and 88 days after respondent had received the resolution revoking Caton Park's establishment approval. Accordingly, respondent's challenge to appellant Public Health Council's resolutions was time barred by the 60-day Statute of Limitations of section 2801-a (subd 10, par [b], cl [v]) of the Public Health Law. Appellants further contended that because respondent's operation of Rofay and Caton Park required both establishment and operating certificates, and because review of the establishment revocations was time barred, respondent's challenge to appellant Commissioner Axelrod's revocation of the operating certificates failed to state a cause of action.

Special Term denied the motion to dismiss the petition finding that the administrative body purported to withdraw the licensee's authorization to perform a function and at the same time directed him to continue to perform that same function. As a result, it held that there was a "lack of finality of determination necessary to commence the running of the shorter statute of limitations proscribed as 60 days in PHL 2801-(a)-(10)-(b) and authorized by CPLR 217." We disagree and therefore reverse.

Initially we note that respondent Moskowitz apparently concedes that the instant proceeding was untimely commenced insofar as the Caton Park Nursing Home is concerned. Thus, in Caton Park, respondent was not directed to continue its operation as he was directed in the case of Rofay. Mr. Unger was issued an interim certificate of operation as to Caton Park. As such, as far as Mr. Moskowitz was concerned, the determination concerning Caton Park was final with respect to him.

With respect to Rofay, it is undisputed that the PHC followed the procedures set forth in section 2801-a (subd 10, par [b]) of the Public Health Law for the revocation of respondent's grant of establishment. Accordingly, the 60-day period of limitations set forth in section 2801-a (subd 10, par b, cl [v]) for review of such

determination applies. The fact that the resolution revoking establishment approval directed respondent to continue to operate the facility did not create an ambiguity with respect to the finality of the determination. The resolution itself explicitly states that it is "effective upon service of a copy hereof on the Respondent by certified mail and that service of this Resolution shall be considered complete upon mailing." In the situation faced by appellants, there was no other alternative but to direct the operator to continue to run the home *temporarily,* until some other arrangement was made for the care of the patients. Concur — Kupferman, J. P., Ross, Asch, Fein and Alexander, JJ.